Good morning. I'm Paul Hemanowski. I represent Charleston Associates, the appellant. At issue are the declarant rights that govern the operation and maintenance of my client's high-end shopping center, as well as the vacant property held by Respondent R.A.S. Two judges face these issues already. Judge Riegel, 25 years' experience on the bankruptcy court, ruled in favor of my client on summary judgment. Judge Due, who was recently appointed as the district judge, took it on appeal, reviewed the same case, and ruled the other way, directing summary judgment in favor of the Respondents. And that's why you're here. That's why I'm here. But when Judge Due did that, she made several serious mistakes, as did I a moment ago, because I meant to say I would like to reserve five minutes of my time for rebuttal. I'll try to help you, but if you can watch the clock as well. I will. I certainly will. Thank you. First thing, the district court improperly dismissed the uncontradicted, uncontroverted affidavit of Jeffrey Drakovich. Seventeen-page long affidavit supported by 130 pages of exhibits explaining what had happened. Mr. Drakovich is an officer of the entity that runs Charleston. Nonetheless, the district court, looking at that affidavit, said, and I'm quoting here, Charleston has not provided any evidence to demonstrate that it transferred the declarant rights to any other entities before the bank's foreclosure. Mr. Drakovich's affidavit went into great detail about the transfers that took place in 2002, 2004. He explained about the millions of dollars that were spent by those other entities performing the functions of the declarant. He testified to all that was done, but she said, we hadn't presented any evidence. And then she went on to say, in the very next paragraph, about that same affidavit. She said, it's uncorroborated, and dismissed it. Nowhere in Rule 56 does the word corroborate appear. Mr. Himanowski, does it matter if the declaration were improperly disregarded if the transfer was not recorded? Actually, it does not. If I understand the question correctly, you could jump ahead to that part of the argument, certainly, and say, okay, let's assume. Well, if you don't want to jump there, that's fine with me. Proceed. Let me put it this way. The affidavit goes into great detail about explaining the transfer of the declarant rights. The judge says, okay, I'm not going to accept that. I'm going to ultimately conclude that those declarant rights stayed with Charleston because I don't think the transfer was proper, she says. Okay, maybe I can ask the question this way. Does your argument depend on us agreeing that the declarant rights were personal property rights as opposed to real estate? Yes. That is one prong. My position exists even if they're real estate. Even if those were an interest in real property, they still didn't get transferred. They did not get transferred? Did not get transferred. Let me jump ahead and explain why that's so. Under the deed of trust, which is the foundation of what we're fighting about. You mean did not get transferred. Right. Yeah, that's the opposite. Yeah, very. Excuse me, please. What I'm saying is they did not get transferred at the foreclosure sale. Okay. And they did not get transferred at the foreclosure sale because the deed of trust, the foundation of their case, defines two sets of collateral. The property, capital P, defined term, it's the dirt. Second category, trust estate, capital T, capital E, a defined term. Trust estate means the dirt and all the other collateral, assuming for a moment that declarant rights were pledged. Assume that they're part of the trust estate. What happens next? The bank issues a notice of foreclosure sale, and they clearly describe the sale of the property, capital P. Why is that significant? Because under the deed of trust, at section 10.3.5, in the bank's deed of trust, it says, we may sell the property, we may sell the personal property separately, or we can sell them together. How? How are we to know which they choose unless we look to the notice of sale, which says clearly the capital P property? That's what they noticed. Let's go ahead to the ‑‑ declaration or affidavit is disregarded. What you really are looking at is the terms of the documents, which you're now going into with the capital P, et cetera. So I'm trying to understand, if you look at section 1.5 and 11.8, they talk about a transfer of the entire property, and those sections talk about all or substantially all of your interest in the shopping center. And then when you go to see what the shopping center is, it's all of the real property. But here, we don't have all the real property. We only have six or eight acres of 41 acres. So would you help me unscramble why you think sections 1.5 and 11.8 are not controlling? Well, for a couple of reasons. First, neither of them say the word only. Neither of them say this is the only way you can transfer something. They simply say, under these circumstances, take 11.8 as an example. If you do the following, you transfer most of your property, all of your property, and you have an assumption of the obligations, and you have a release of liabilities, those three steps, then you can transfer the declarant rights. It doesn't say that's the only way. Consider this for a moment. Are you suggesting that that's an ambiguity? I'm suggesting that that is one way to transfer it, but not the only way. Okay. So since it's a contract, that's sort of an unusual way to read it. You're saying, okay, that's not the exclusive way. It's a way. Yes. So where do I find the other ways laid out in the contract? You find it this way. Okay. This is a commercial shopping center. We sell or we lease, depending, parcels of land. We can sell a parcel. We can sell five parcels. We could sell ten parcels. We could keep one. We could keep the declarant rights and not keep any property. There's nothing in these documents that requires us to be a landowner to be the declarant, because when you're a developer, frequently you're going to be selling parcels, just as the record shows we sold the Great Indoor parcel, as an example. Those parcels get sold out. We retain the declarant rights. So you can see that we could be selling one, two, three, 90 percent of the parcels, 95 percent of the parcels. The declarant rights don't go. Okay, so I'm still having a little bit of an issue, so help me out. Sure. I can understand that you could argue it's not exclusive, but it does seem that declarant rights are a fixed bundle of rights under the contract, and you're saying, well, of course, we could sell this or that, and that's true. I mean, developers do. They don't necessarily buy and sell everything in a bundle or in a whole 41-acre tract. But where does it say that you can do what you're talking about and retain the declarant rights? How do I get there? What parts of the contract do I put together? There isn't a part of the contract that says what I just said, nor is there a part of the contract that stops it. It doesn't say that. I knew you were going to say that. Okay. There's no such restriction in the contracts. Okay, I understand your argument there. And in the case of the declarant rights from our point of view, remember they were conveyed back in 2002 with the property. It's been suggested by my colleagues that declarant rights run with the land. If that were so, why didn't they run with the land in 2008 when we conveyed to our affiliate? Well, the fact is we conveyed them back in 2002, so when we came to the deed of trust, and the deed of trust in that long list of 18 items of collateral, that boilerplate, it refers to the declarant rights. It only says what declarant rights you may have. We had none at that point. We didn't have any to pledge. When it came time for the sale, the bank didn't notice the sale of declarant rights, didn't notice the sale of the trust estates, noticed only the sale of the property, the dirt. These were forms and documents prepared by the bank, with the exception of the settlement agreement that was negotiated. But these other documents, including the trustee's deed, were prepared by the bank or its agent, the title company. They chose to tell us that they were selling the property. Under section 10.3.5 of the trust deed, that's something that they were entitled to do, sell just the property. That's what they chose. Counsel, is it common in real estate contracts to have separate declarant rights, or is this something that was unique to this contract? Oh, no, it's quite common to have those separately. Surprisingly, there's not a lot of law in either the Ninth Circuit or Nevada specifically on declarant rights, but there is this, and I ran across this just this past weekend looking. In Nevada, there's a statute that says to transfer declarant rights, it must be in writing and it must be recorded. If you are a residential condominium under Chapter 116 of Nevada statutes, or if you are a commercial development that has elected to come under Chapter 116, which you can do. What chapter of the Nevada revised statutes are you quoting from? Chapter 116. But that is a specific area of the statutes that's addressing a particularized type of real estate, so that's not a general proposition of Nevada law. My point is simply this. The legislature knew how to require declarant rights to be transferred in writing and recorded if that's what they chose to do. For that particular type of transaction. They chose to do it for that particular instance, but they did not choose to extend that requirement beyond that particular regime. And if we were to look at the old statutory, pardon my Latin, expressio unius exclusio alterius, having chosen to legislate in that area, they're telling us that they deliberately are leaving the other outside that area. Who knows? I can't look into the minds of the legislature in Nevada. So would you talk about Section 2.1A on the settlement agreement? Sure. Because that's another fixed document that we need to interpret. It's a very significant document, of course, because this is the one that was negotiated and talks about foreclosure. Now, if we look at the settlement agreement, starting with page 2 when it defines the deed of trust, and it says what it's concerned about is, and I'm quoting here, collectively the deed of trust covering certain real property located in Clark County, Nevada, the, quote, capital P property, as more fully described in Exhibit A to the settlement agreement, which is the legal description of the dirt. That's how they reference the deed of trust. Then they come to 2.1A where they say the lender shall, without opposition, foreclose or cause the occurrence of a deed of trust sale with respect to the deed of trust in accordance with applicable state law. Pause for a second. Applicable state law in this case is a little confusing because the deed of trust is governed by California law. I don't know why. That same paragraph then goes on to say at the end of it, lender acknowledges and agrees that it accepts the capital P property, subject to all outstanding taxes and assessments. Paragraph B talks about capitalized terms shall have the same meanings. C once again references the property, nothing more than the capital P property. Section 2.2, conditions to the agreement, references the capital P property over and over and over again. What happens to all the other rights that are in, like, sections A through R of the deed of trust? They just float out there? They did not foreclose on any of the collateral, and they extinguished the debt. So that collateral is no longer encumbered to the extent there is any. Now, for example, that collateral includes carpets, dishwashers, elevators, things that don't exist on raw land because it's a form presentation. But nonetheless, that collateral is all discharged of the debt because pursuant to the settlement agreement and the trustee sale, when the hammer came down, the debt was extinguished because they bid the full amount of the debt. So what's happened is the property passed, but the remainder of the trust estate, which was never noticed, did not pass, as a matter of law, did not pass as a matter of fact. So you're saying that in the settlement agreement, in effect, there's this bifurcation between the land, capital P property, and remaining rights that are laid out in the deed of trust. Yes, consistent with the deed of trust, which split them into two piles, and they only noticed the sale of the one pile. Although the settlement agreement doesn't say any of that. The settlement agreement uses the same capitalized terms, and just like the deed of trust, it defined the property with the attachment to the settlement agreement as the dirt. There is not one reference in the settlement agreement to the REA and the declarant rights. But you're not arguing ambiguity. I'm trying to understand how you get to where you want to get to without using the word ambiguity. Well, I'm not trying to run away from the word ambiguity. Please, don't misunderstand me. Okay. What I'm saying is that rather than being terribly ambiguous, to me it's rather clear that the district court, acting as an appellate court, erred in several significant ways, not the least of which was weighing these evidentiary issues, which I don't think is, on summary judgment, is something either a trial court judge or certainly the district court judge acting as an appellant should do. You've completely run out of your time, but that's because we had a lot of questions for you. So I'm going to give you some rebuttal time, but I'll add a little time to them if the bank needs it as well. Thank you. Good morning. I'm Marshall Wallace. I represent RA Southeast, which is the owner of this 23 acres of undeveloped property that really is what, in large measure, this is about. My colleague, Lance Jurich, represents City National Bank. We're going to try to more or less divide our time equally. I'm going to focus upon the first of the two arguments that Charleston makes here. Let's step back, if I may, and make sure we all understand what is really at stake here. This case is about who owns these development rights, and what are these development rights? They are the rights that give control and discretion over how the property is developed, and most specifically, the undeveloped property that my client, RA Southeast, owns. If you look at Section 3.8 of the Reciprocal Easement Agreement, it says all initial construction of improvements within the shopping center shall be subject to the prior approval of the declarant. Also, equally critically, Sections 9.1 and 9.2 of the same document give the discretion to the declarant over permitted uses of property and exclusive uses of the property. That's really what we're talking about. What's the setting here? Where does this really matter? It doesn't matter on the 18 acres that's already built and owned by Charleston, where it really matters is on the undeveloped land, who is going to have the right to determine, in the first instance, how that land is developed. And, of course, that is my client's land. That's what we're here for. What is the situation that comes to this court? It is that the undeveloped property, in a very inclusive deed of trust, is pledged by Charleston to City National Bank. The foreclosure occurs. City National takes the land and then sells it to my client, who paid very good money for it. And what do we hear from Charleston? We hear two things, and this is the two bases for its appeal. Number one, that it secretly, in an undocumented, unrecorded, and undisclosed transaction, conveniently earlier gave those declarant rights to its affiliate. That's mostly what I want to focus upon here. The second argument that Charleston makes is that after they defaulted and there's a notice of default recorded, then they have negotiations, there's a settlement agreement, and somehow this very broad settlement agreement, without any mention, excludes those vital development rights that control the undeveloped property that is being taken in the foreclosure. Because it was secret, right? So the first part of it is that that's a secret transaction. It wouldn't come up during the settlement discussions, right? Because it wouldn't be secret anymore. So they certainly kept it secret. Well, whether it's secret or not, I think they would argue that it's split somehow. So could you address that? Because much of their argument is predicated on this notion that, as he puts it, the dirt versus these other rights. Sure. And there's all kinds of authority in the briefs that we've given to you to indicate that these sorts of development rights, these declarant rights, are so intertwined with the development, the building, the determination of what will be put onto this undeveloped land and how it can be used and how it may not be used. They are so tangled up together that they must run with the land. What's your strongest case under Nevada law to support that proposition? You know, that's a very good question. Nevada law is, you can say, fairly bereft of any case law dealing with declarant rights per se. Well, I thought you said there was a plethora of authority to support that position, so that's why I asked the question. What's your strongest case? I did say that. The most comparable case that is before this Court is not a Nevada case. It's the In re Arcadia case. And that case is essentially on all fours. It's from Massachusetts. And, in fact, this case is easier than Arcadia. It's cited in our briefs, both city nationals and RA Southeast. And essentially what happens there is there is a development, and not only does the developer record declarant rights such as these, but it goes out to the local city, the jurisdiction, and gets a permit to use its property to build certain ways. And all of these things together are deemed to run with the land in the document. Is that a data check? Go ahead. The only thing I'd say is, okay, but then if we have to go outside of Nevada or possibly California, depending on which document you're looking at, then they cite Colorado and a couple other places that say these rights are personal. So what do we do about that? We don't have a Nevada case. So, first of all, context matters here. And so whether they're personal rights is an issue that's, say, whether or not they're personal property and must be memorialized in writing under the statute of frauds. Well, I guess maybe I should have been more precise. Whether they run with the land is in terms of whether they're intertwined and run with the land, which I think is your argument. So that's one of our arguments. To be clear, stepping back, our argument is that, first, you cannot have this prior unrecorded, undisclosed oral transfer of these things, not just because they run with the land, but because the Nevada statute of frauds and the Nevada recording statutes require that this kind of a transfer to be in writing. But that begs the question as to whether or not they run with the land, because the statute of frauds would only be triggered if they are deemed interest in realty. Well, not quite, because, first of all, there's a distinction between whether or not they run with the land or are personal rights, these declarant rights, and whether they are subject to the statute of frauds. What would render them subject to the statute of frauds if they do not run with the land and are not real property interests? So that's a, I think, a very straightforward question and a very straightforward response. Let me just read to you the Nevada statute of frauds. It says, No interest in lands, okay, that sounds like real estate, what we're talking about, or power over or concerning lands or in any manner related thereto shall be assigned, surrendered, or declared unless by act or operation of law or by deed or conveyance in writing, subscribed, is declaring the same. So that part is very straightforward. Charleston would like that to be about whether these run with the land and whether they're personal or real property. It's all a matter of whether they fall within that very all-embracing You're saying that you don't have to make that categorization if, in fact, they fall under some umbrella of concerning the land? You know, I'm sorry, Your Honor, I just didn't hear your question. I want to answer it. Your argument, then, is that the categorization doesn't matter so long as they fall under an umbrella of, quote, concerning? So for the statute of frauds. For the statute of frauds. You just look at the statute and say, do these fall within it? How is your argument affected by opposing counsel's citation and reliance upon NRS 116, which talks about — which he represents, gives a specific instance where the Nevada legislature has said declarant rights must be recorded? Our argument is entirely consistent with that. And this is a new argument that we've heard, but I'm familiar with the statute, and it does apply to condominiums to simplify things. What Mr. Himenowski implied was that there's some other statutory regime that Nevada has enacted for declarant rights that apply to shopping centers or commercial property, and that it doesn't say it. There's no such thing. No. I didn't take it that way. I thought his point was the Nevada legislature knows when to require a writing and recordation for declarant rights. It did it in NRS 116, and the implication is if it applied in a different context, these statutes would have been enacted to say so. That's what I thought his argument was. So I think that would be reading way too much into the fact that there's a specific statute dealing with condominiums, and why is that? Because there are individual homebuyers who the government doesn't want to have advantage taken advantage of. Why don't you wrap it up? I've given you already. I'm trying to answer the question. But when you finish that, I've given you about five extra minutes already. And to me, that 116 says, you know, here is the base rule. Same thing as the restatement. It's very clear. You've got to have them in writing. You have to record them. So that supports our position that the same should be true for commercial property. Could you reset the clock, please, to nine minutes? Thank you. May it please the Court. Lance Jurich of Loeb & Loeb on behalf of City National Bank. Judge Davis, you asked Mr. Humanowski a good question. It was, are you contending that the settlement agreement is ambiguous? And I'm not sure we got an answer there. And I think the reason for that is that Charleston has waived that argument. Charleston took the position, and this is in the record, when it filed evidentiary objections to City National Bank's evidence in connection with the summary judgment motion before Judge Riegel at ER 682, Charleston says, they're trying to introduce evidence of Mr. McKenna in an attempt to vary its terms, the terms of the settlement agreement, despite the fact that the instrument is valid, complete, unambiguous, and contains an integration clause. So this is what they said about the settlement agreement when they brought their summary judgment motion. It is an unambiguous document. Would you then respond to his argument? So I take it his key argument, as I understood it, is that since the settlement agreement uses a capital P for property, that that means only real property. So that seems to me to be the heart of his argument on that. Would you give us your view? Yes, Your Honor, starting with waiver, that I think they've waived that argument to contend that it's ambiguous because they moved for summary judgment, objected to evidence to explain that. But I can't, I mean, it's hard for me to understand their interpretation of the settlement agreement when it says that the lender can foreclose with respect to its deed of trust. I'm sorry, 2.1a is the operative language there, and I don't know where in this document it says, but you can't foreclose on the trust estate. And so I'm having a hard time really understanding foreclosing on your deed of trust, foreclosing with respect to your deed of trust. The deed of trust covers a tremendous amount of collateral. The deed of trust covers page upon page of collateral. We didn't limit what we were going to foreclose on, and you would think if there was a secret piece of collateral that was supposed to be carved out of the settlement agreement, it would be specified. That would be a pretty material term. So I can't see how anyone could read the settlement agreement to say collateral was being left behind. Your client certainly would not have proceeded with the settlement had that been put on the table. Absolutely not. No lender, no rational actor would have proceeded. Correct. I'm trying to understand how in the real world such a scenario could ever be accepted by a court. Your Honor, that's where we come out as well. When a lender and my client loaned $30 million on a vacant hunk of real land in the middle of Vegas. And took security in everything. Everything. I don't think we could have been broader in our deed of trust. The deed of trust is the whole document, right, with all of its A through R sections. Right. And actually if you look at paragraph C of the deed of trust, it also defines property to be a bit broader as well. It defines property to include covenants running with the land and easements. That's part of the definition of capital P property. Does it matter in the end under the settlement agreement whether you characterize the declarence rights as personal property, running with the land, running separate from the land, or some other way? No, Your Honor. The deed of trust pledges the entire bundle of rights. The trustor, the borrower, pledges to the trustee, the title company, that holds the entire bundle of sticks. Holds those bundles of sticks and says, I promise to repay you the $30 million. If you don't pay me back the $30 million, the sticks are going to the lender. And one important stick is the right for a developer to build on its property. So is the bottom line here that one or two sticks are held out and then they get to sell those separately to the subsequent developer? Is that what's going on basically? That's exactly what's going on. It's got economic value. And we're making arguments here that we held on to those. And if you want to proceed with the development, you're going to have to dance with us in the form of a big check. Correct, Your Honor. And that came clear to Judge Due. It was obvious, again, how these development agreements work, is the developer thinks that it's going to develop the whole property. And when you have a residential subdivision or shopping centers, you don't always build 1,000 houses at once.  Sell those. Or in the shopping center, you build the great American site and build the existing center, and there's a vacant center. And the REA covers those types of situations. And the REA says, and this is what Judge McKeown focused in on, the REA itself says those rights at the end of the day flow when the sale of the center occurs, the shopping center, their last interest in the center. That's the vacant land almost always, because the developer has built out everything else. What's left? The vacant land. What do you need to build on the vacant land? The declarant rights. So under the Arcadia case, in that case, I think it's even better for us. We had a pledge of the declarant rights. In Arcadia, the lender didn't have a pledge of those rights. And the court in Arcadia said, irrespective of that, with a real estate foreclosure, and those were personal rights in Arcadia, they were personal contract rights, even with a pure real estate foreclosure, those rights were so integral to the operation of the property that those rights went to the lender. But, of course, that's a Massachusetts case. Correct, Your Honor. And I think what can't be lost on the court here is the REA is essentially the Constitution. There's no declarant right that exists in nature. It's a question of contract. And if you look at Section 7 of the REA, drafted by Charleston, this provision says, all of the provisions of the REA shall be covenants running with the land and equitable servitudes pursuant to applicable law. Now, one of the rights in the REA is a declarant right. It's a covenant running with the land under the definition that Charleston put in its own REA. What can you say about the cases that seem to go the other way? They're very fact-specific. It's hard to get a general rule. As a person that represents banks, the general rule that I notice from all those cases is when the bank forecloses on the developer, the bank gets those rights. But Charleston's a little bit— they don't necessarily say that it's a personal property right. They say the rights are personal to the developer. So if we foreclosed on the developer's interest, Charleston's interest, we get those rights. I guess my concern or question is why does that matter? I mean, they cited some good cases. I went to read Illinois, I think Colorado. You have Arcadia. If you have this contract, why does it matter? It doesn't. I'm just trying to make sure I'm not missing something. You're not missing anything. I really think that all of those cases, and there's really not a line of cases either way, all of the cases really look to the agreement. And that's why I'm saying if we look to the agreement and interpret this contract, what does this contract say? All provisions, all provisions of this declaration shall be covenants running with the land. I think that ends the analysis that they've defined these rights, all rights, they've defined these rights as interests in land. Thank you. Thank you. I'm going to give some additional time to Charleston, so would you add two minutes for rebuttal? Thank you. I'm going to cover several points just as fast as I can. Excuse me if I speak real quick. Judge Davis, the bank wouldn't take these rights because they come with considerable obligations. As you saw, millions of dollars a year are spent, but you also have to make some very critical decisions from time to time. For example, are they going to tell me when I can have a tenant in my existing shopping center revise his building? Are they going to tell me when I can change the requirements that apply to exclusivity provision to allow for a second liquor store? These are the kinds of decisions that a bank doesn't particularly want to take on if they don't have to. And for one year after the foreclosure sale, when they bought just the dirt, they never purported to exercise them. It only became an issue when they chose to sell the property to RAS, and RAS said, oh, I'd like to have the declarant rights. And the bank then went back and said, whoops, that's where this came from. Statute of Frauds was raised. Statute of Frauds applies as a defense between the two people to an oral agreement if they dispute it. It's not a defense for somebody five years later. More importantly, Park Performance takes a case out of the Statute of Frauds. Clear law in Nevada, Zinino v. Paramore, and the lines that come after that. That's where the Drakovich Affidavit comes in, listing all that Park Performance. Statute of Frauds has no application here. We talk about Section 2.1 and what's being foreclosed upon. Please remember, when you look at that settlement agreement, it starts out defining the deed of trust as relating to the property. And then so that there's no confusion, they attach the legal description so you know it's the property. When we come back to the point about the property versus the trust estates, imagine if you would that the collateral were something simple. I pledge as collateral my boat and my Ford truck. I go into default, you exercise your power of sale, and you say I'm going to sell the Ford. You're stuck with that. That's what you sold. That's what the trustee stood at the auction and said. I have for sale the following. And they bid, and the hammer came down, and my truck got sold. But my boat. Unfortunately, I still have my boat. And if you've ever owned one, you'll understand that. I think we'll leave on that thought. I appreciate the arguments of all counsel. The case of Charleston v. City National and the floating boat will be submitted.
judges: McKeown, Rawlinson, Davis